BRENDA KAYE LAWING KILCOYNE *et al.*, Plaintiffs-Appellants, v. C. PAELMO *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—88—2974

Opinion filed September 24, 1990.

Sheats & Kellogg, of Chicago (Dennis J. Kellogg and Lititia Spunar-Sheats, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Ralanda Webb, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Brenda Kaye Lawing Kilcoyne (plaintiff), individually and as independent administrator of the estate of her father, Jesse Lawing, brought an action against mental health care professionals (defendants)[1] employed by Chicago-Read Mental Health Center (Read), a State of Illinois mental health care facility, alleging medical malprac-

---

[1]The following mental health care professionals are named defendants in this appeal: Dr. C. Paelmo, Dr. Kris Lall, Gloria Gumbinger, Gloria Handricks, Dr. Margaret Melstrom, Dr. Mary Lou Bischman, L. Padernis, E. Jones, L. Gaines, J. Houston, C. Wilson, L.P.N., Dr. R. Malow, Dr. E. Morales, L. Bradley, Dr. John Doe, Mary Anderson, L.P.N., estate of K. Knight, a/k/a H. Knight, and Tamara Handricks.

tice and seeking recovery under the Illinois Wrongful Death Act (Ill. Rev. Stat. 1987, ch. 70, par. 1 *et seq.*). Plaintiff, individually and as guardian of her minor children, also brought an action to recover for personal injuries sustained by plaintiff and her children as a result of defendants' alleged negligence. The circuit court granted defendants' motion for summary judgment on the grounds that plaintiff failed to state a cause of action and that her action was jurisdictionally barred. It is from this order that plaintiff appeals. We affirm.

On March 25, 1983, plaintiff filed a "Petition for Involuntary Admission," of Patrick Kilcoyne on the grounds that Patrick had threatened to kill his father-in-law, Lawing, and cause harm to plaintiff. Pursuant to court order, Patrick was admitted to Read for examination and evaluation purposes. Defendants' evaluation of Patrick disclosed that he was "mentally ill and because of his illness [he was] reasonably expected to inflict serious physical harm upon himself or another in the near future." A hearing was scheduled on plaintiff's petition for March 31, 1983.

On March 28, 1983, Patrick requested formal voluntary admission to Read under the "Voluntary Admission of Adults" provision of the Mental Health and Developmental Disabilities Code (the Code) (Ill. Rev. Stat. 1987, ch. 91½, par. 3—400). Defendant Dr. C. Paelmo, Patrick's examining physician, certified Patrick's request for informal admission pursuant to section 3—300 of the Code. (Ill. Rev. Stat. 1987, ch. 91½, par. 3—300.) The circuit court subsequently granted Patrick's voluntary admission request and dismissed plaintiff's petition for involuntary admission.

The record discloses that during one of plaintiff's visits while Patrick was confined, he demanded that plaintiff permit him to return home, struck her in the abdomen, despite her pregnant condition, and threw food at her. Also during Patrick's confinement, he threatened to kill Lawing, plaintiff and himself.

On April 4, 1983, Patrick exercised his statutory right to be discharged from Read under section 3—403 of the Code (Ill. Rev. Stat. 1987, ch. 91½, par. 3—403). Patrick informed plaintiff of his discharge, and plaintiff subsequently discussed Patrick's discharge with a Read therapist. Patrick informed plaintiff that upon his discharge he intended to live with a relative, participate in an out-patient counselling program, and continue taking his prescribed medication.

On April 7, 1983, Patrick telephoned plaintiff and informed her of his intent to visit her residence. Plaintiff indicated to Patrick that he was not welcome, hung up the telephone and barricaded the front door of the home with furniture. Patrick arrived at plaintiff's home

shortly thereafter and, after an unsuccessful attempt to "break the door down," gained entry to plaintiff's residence through a window which he had broken. Upon entering plaintiff's residence, Patrick stabbed Lawing to death and held Patrick's two stepchildren hostage at knife point in the basement of the home until he was later arrested by police.

Plaintiff's five-count amended complaint alleges the following. Counts I and V allege that defendants negligently released Patrick after failing to properly diagnose and treat him. Count II alleges that defendants' conduct was willful and wanton. Counts III and IV allege that the defendants' negligent acts resulted in trauma to plaintiff and her children.

We believe that the instant action is one against the State of Illinois and, hence, one that should have been brought in the Court of Claims. Article XIII, section 4, of the Illinois Constitution states, "[e]xcept as the General Assembly may provide by law, sovereign immunity in this State is abolished." (Ill. Const. 1970, art. XIII, §4.) The legislature, acting under its constitutional authority, has reinstated sovereign immunity. Section 1 of "An Act in relation to immunity for the State of Illinois" states the following:

"Except as provided in the 'Illinois Public Labor. Relations Act', enacted by the 83rd General Assembly, or except as provided in 'AN ACT to create the Court of Claims, ***' *** the State of Illinois shall not be made a defendant or party in any court." Ill. Rev. Stat. 1987, ch. 127, par. 801.

The Court of Claims Act (Ill. Rev. Stat. 1987, ch. 37, pars. 439.1 through 439.24—9) establishes a Court of Claims to serve as a forum for actions against the State. Section 8 of the Court of Claims Act provides:

"The court shall have exclusive jurisdiction to hear and determine the following matters:

\* \* \*

(d) All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit ***; provided, that an award for damages in a case sounding in tort, other than certain cases involving the operation of a State vehicle ***, shall not exceed the sum of $100,000 to or for the benefit of any claimant." (Ill. Rev. Stat. 1987, ch. 37, par. 439.8.)

The determination of whether an action is in fact one against the State, and therefore one that must be brought in the Court of Claims, depends not on the formal identification of the parties, but rather on

the issues involved and the relief sought. (*Healy v. Vaupel* (1990), 133 Ill. 2d 295, 549 N.E.2d 1240; *Herget National Bank v. Kenney* (1985), 105 Ill. 2d 405, 475 N.E.2d 863; *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 470 N.E.2d 1029; *Hudgens v. Dean* (1979), 75 Ill. 2d 353, 388 N.E.2d 1242; *Sass v. Kramer* (1978), 72 Ill. 2d 485, 381 N.E.2d 975; *Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 101 N.E.2d 71.) "Thus, the prohibition 'against making the State of Illinois a party to a suit cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested'." (*Healy*, 133 Ill. 2d at 308, 549 N.E.2d at 1247, quoting *Sass v. Kramer* (1978), 72 Ill. 2d 485, 491, 381 N.E.2d 975, 977.) If a judgment for a plaintiff could operate to control the actions of the State or subject it to liability, it will be deemed an action against the State and the circuit court is without jurisdiction to entertain the action. *Schwing v. Miles* (1937), 367 Ill. 436, 441-42, 11 N.E.2d 944, 947; *G.H. Sternberg & Co. v. Bond* (1975), 30 Ill. App. 3d 874, 877, 333 N.E.2d 261, 264.

■ The above principles were applied in *Robb v. Sutton* (1986), 147 Ill. App. 3d 710, 498 N.E.2d 267, wherein the plaintiff brought an action in the circuit court for negligent and reckless misrepresentation by the defendant; an assistant dean employed by Southern Illinois University. The defendant moved to dismiss the complaint on the grounds that the action was in essence one against the State and that the Court of Claims had exclusive jurisdiction over the matter. The circuit court granted the defendant's motion, and the appellate court affirmed. The appellate court determined that when "there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) *the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment* [emphasis added]; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official function of the State," then the cause of action is only nominally against the employee and must, therefore, be brought in the Court of Claims. *Robb*, 147 Ill. App. 3d at 716, 498 N.E.2d at 272.

Relying on *Madden v. Kuehn* (1978), 56 Ill. App. 3d 997, 372 N.E.2d 1131, and *Watson v. St. Annes Hospital* (1979), 68 Ill. App. 3d 1048, 386 N.E.2d 885, plaintiff argues that the present action falls under appellate court authority allowing certain tort actions against State doctors and employees to be brought in the circuit courts. Plaintiff's reliance on *Madden* and *Watson* is misplaced, as both cases are

factually distinguishable from the instant case.

In *Madden*, the plaintiff filed a wrongful death action against the estate of a deceased physician, alleging that the plaintiff's decedent died as a result of the physician's negligent failure to diagnose and treat a hereditary disease while the plaintiff's decedent was a prison inmate. At the time of the treatment in question, the physician was employed by the Illinois Department of Corrections, and the circuit court dismissed the claim against his estate on the ground that the action was barred by sovereign immunity. The appellate court reversed, rejecting the argument of the physician's estate that the Court of Claims had exclusive jurisdiction over the matter. The appellate court stated that the doctor was alleged to have breached duties "which every physician owes his patient, rather than obligations incurred solely by virtue of holding a public office" and that the State could not be rendered liable on the claim against the physician's estate, since no action had been brought against the State in the Court of Claims and the plaintiff's suit sought recovery only from the assets of the physician's estate or from his insurance carrier. (*Madden*, 56 Ill. App. 3d at 1001, 372 N.E.2d at 1134.) The appellate court concluded that the action against the physician's estate was not one against the State and therefore could be brought in the circuit court. *Madden*, 56 Ill. App. 3d at 1001, 372 N.E.2d at 1134.

Like *Madden*, *Watson* involved four consolidated medical malpractice actions filed in the circuit court against physicians and nurses employed by a State instrumentality for their failure to treat and diagnose their patients' conditions. Following defendants' motions to dismiss, the circuit court ruled that these tort actions were in effect against the State which must be heard and determined in the Court of Claims. Relying extensively on *Madden*, the appellate court reversed, holding that since plaintiffs' suits were against the individual defendants seeking recovery against their personal assets or their insurance, the State was not the real party in interest. (*Watson*, 68 Ill. App. 3d at 1053, 386 N.E.2d at 889.) The court further stated that a judgment for plaintiff would not control the actions of the State. *Watson*, 68 Ill. App. 3d at 1053, 386 N.E.2d at 889.

Both *Madden* and *Watson* involved those duties "which every physician owes his patient, rather than obligations incurred solely by virtue of holding a public office." (*Madden*, 56 Ill. App. 3d at 1001, 372 N.E.2d at 1134.) These duties involve those duties directly owed by the doctor to his patient, such as the duty to exercise reasonable care in the treatment and diagnosis of his patient.

The services performed by the mental health care profes-

sionals here involved the determination of whether a person should be institutionalized by the State and the additional obligations incurred in making this determination. We do not believe that these duties equate with those duties generally owed to patients by their doctors. The alleged duties here arose solely by virtue of defendants' State employment. (See *Robb*, 147 Ill. App. 3d at 716, 498 N.E.2d at 272.) Furthermore, the duty allegedly owed here was to a third party, whereas in *Madden* and *Watson* the duty was directly owed to the patient.

The *Madden* and *Watson* courts found persuasive the fact that the State would not be subject to liability in those actions. That is not the case here. During oral argument plaintiff's counsel conceded that a judgment against defendants here would ultimately be a judgment against the State. We believe that a judgment for plaintiff here could operate to control the actions of the State, as it would effectively require the State to redraft its policies and guidelines regarding the incarceration and release of mental patients.

We note that our supreme court in *Healy v. Vaupel* (1990), 133 Ill. 2d 295, 549 N.E.2d 1240, expressed its concern over the fact that the *Madden* and *Watson* decisions have been criticized as "working an improper severance of the relationship between master and servant." (*Healy*, 133 Ill. 2d at 312, 549 N.E.2d at 1249, citing LeBlang, *Medical Negligence And The Court Of Claims: A Dilemma For The Sovereign's Doctors*, 68 Ill. B.J. 534 (1980).) Because the factual situation here is distinguishable from those cases, we need not determine the correctness of those decisions.

In summary, we hold that the *Madden* and *Watson* decisions are factually inapposite to the instant circumstances and that the State is the real party in interest here which requires plaintiff to bring suit in the Court of Claims. (See *Senn*, 104 Ill. 2d 169, 470 N.E.2d 1029; *Schwing*, 367 Ill. 436, 11 N.E. 944; *Brucato v. Edgar* (1984), 128 Ill. App. 3d 260, 470 N.E.2d 615.) Accordingly, we affirm the circuit court's entry of summary judgment in favor of defendants.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.