ARTHUR NIKELLY, Plaintiff-Appellant, v. PETER STUBING *et al.*, Defendants-Appellees.

Fourth District   No. 4—90—0313

Opinion filed October 25, 1990.

Marvin Gerstein, of Urbana, for appellant.

John B. Alsterda and Charles L. Palmer, both of Franklin, Flynn & Palmer, of Champaign, for appellees.

JUSTICE LUND delivered the opinion of the court:

The plaintiff, Arthur Nikelly, appeals the dismissal of his complaint against defendant Peter Stubing, who, prior to June 20, 1987, was director of the Mental Health Division (MHD) of the McKinley Health Center at the University of Illinois (University), and defendant Timothy Roberts, who became director of the MHD in early July 1987. Nikelly requested damages for alleged intentional and unjustified interference with a contract of employment and intentional infliction of emotional distress by defendants. The circuit court concluded that the defendants' actions, of which Nikelly complained, were within their supervisory authority and functions as University employees and, thus, Nikelly's lawsuit was in reality a suit against the State. On this basis, the circuit court held that it did not have subject-matter jurisdiction over Nikelly's suit and dismissed Nikelly's complaint.

Count I of Nikelly's complaint alleges that at the relevant times, Stubing and Roberts were directors of the MHD, and that prior to October 7, 1987, Nikelly was employed both as a tenured professor at the University and a clinical psychologist at the MHD, pursuant to a valid and enforceable contract between him and the University. According to Nikelly's complaint, defendants were aware of this contract.

In count I, Nikelly alleged that during his 28 years of employment with the University, he compiled an excellent record in the area of clinical psychology, which included, among other duties, providing psy-

chological therapy to students at the University. Also, Nikelly alleged that during his employment with the University, he consistently met high professional standards, as evidenced by his being granted tenure and by repeated favorable performance evaluations and salary increases which he received. Count I further states that at all relevant times Nikelly was "an especially timid or sensitive person, unusually susceptible to forceful words and conduct," and that defendants were aware of this.

The following are the specific allegations of misconduct on the part of defendants which are alleged in count I of Nikelly's complaint:

"10. That on July 19, 1987, Defendant Peter Stubing, Director of the Mental Health Division, met with Plaintiff in Defendant Stubing's office, at the request of Defendant Stubing.

11. That at said meeting of July 19, 1987, Defendant Stubing informed Plaintiff of numerous alleged complaints regarding Plaintiff's therapy skills and behavior in the MHD offices; and stated that he no longer would allow Plaintiff to conduct individual psychotherapy or intake evaluations or to perform other responsibilities typically performed by an experienced and highly trained clinical psychologist.

12. That said complaints were insubstantial and unsubstantiated and served merely as a pretext for adversely altering Plaintiff's employment responsibilities.

13. That after July 19, 1987, Defendant Stubing continued to make statements to the Plaintiff of complaints, accusing the Plaintiff of incompetence without substantiation in the manner previously alleged herein.

14. That on August 13, 1987, Defendant Timothy Roberts met with Plaintiff, at Defendant Roberts' request; that Defendant Roberts told Plaintiff that Plaintiff had no employment responsibilities, that Plaintiff's only option was to retire, unless Plaintiff could find a job elsewhere in the University, and that he [Roberts] could have Plaintiff answer the telephone in the event Plaintiff declined to retire; and that these statements constituted a threat to alter adversely Plaintiff's employment responsibilities.

15. That after August 13, 1987, Defendant Roberts repeatedly made unscheduled visits to Plaintiff's office and asked Plaintiff when he intended to retire, making further statements of complaint, accusing the Plaintiff of incompetence without substantiation in the manner previously alleged herein.

\* \* \*

18. That in performing the above-described acts, Defendants abused their position[s] of authority over Plaintiff and exploited their awareness of Plaintiff's unusual susceptibility to intimidation in order to create an unpleasant and threatening employment environment for Plaintiff, with the intent to inflict Plaintiff with severe emotional distress; and that Defendants' acts were outrageous."

Nikelly alleged that at the times of all of the above events, he wished to remain an active professor and clinical psychologist at the University, and defendants were aware of this wish. Also, Nikelly alleged defendants' actions caused him to experience severe emotional distress, as evidenced by "persistent epigastric pains, diminished energy and sleeplessness, as well as anxiety and unpredictable mood alterations." Nikelly alleged defendants sought to inflict severe emotional distress upon him in order to coerce him into retiring, and that he did retire from the University on October 9, 1987, as a result of defendants' intentional infliction of severe emotional distress.

Count I of Nikelly's complaint concludes that defendants "conspired and acted in concert together for the specific purpose of" forcing his early retirement, that defendants "acted with malice individually and jointly toward that end," and that defendants' coercive treatment of Nikelly rendered his retirement "an intentional and unjustified interference" with his contract with the University. On the basis of these allegations, Nikelly requested damages attributable to his coerced retirement and to defendants' intentional interference with his contract of employment.

Count II of Nikelly's complaint contains the same allegations as count I, except that the allegation that defendants' actions rendered Nikelly's retirement an intentional and unjustified interference with his contract with the University is omitted. In this count, Nikelly requests damages stemming from defendants' intentional infliction of emotional distress.

On March 13, 1990, the circuit court allowed the defendants' motion to dismiss under section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—619). On April 19, 1990, the circuit court denied Nikelly's motion for reconsideration of its order of dismissal, and this appeal ensued.

Nikelly contends that the actions of which he complains were deliberate, intentional, and beyond the scope of defendants' authority as employees of MHD and, thus, defendants were not acting as representatives of the State when they took these actions. Nikelly argues that the duties which defendants allegedly breached were owed to him

independently of the fact defendants were at the relevant times University employees. Nikelly notes that the University did not direct defendants to engage in the tortious conduct which he alleges. For these reasons, Nikelly argues that his action is in reality against the defendants in their individual capacities, and that this is not a case in which individual defendants are mere nominal parties, and the State is the party actually being sued.

Nikelly also argues that an affidavit of Steve Veazie, an associate university counsel with the University, on which defendants relied in their motion to dismiss, is conclusory insofar as it states that at the relevant times defendants acted in their official capacities without providing any facts in support of that conclusion. Nikelly further asserts that this affidavit is predicated on hearsay, and that defendants themselves, rather than associate university counsel, were the proper persons to provide an affidavit as to whether they acted in their official capacities.

Defendants argue that this is in reality an action against the State, because the allegations of Nikelly's complaint reveal that defendants were acting within their supervisory authority and functions when they took the actions of which Nikelly complains. On this basis, defendants assert the issues involved are inseparable from the parties' formal relationship with MHD, which is controlled by the board of trustees (Board) of the University. Defendants state that where, as here, a complaint does not allege breaches of duties owed by State employees to the general public regardless of their status as State employees, dismissal of the complaint is required because the Court of Claims has exclusive jurisdiction over such cases.

Defendants further argue that Nikelly's allegations of exploitive, intimidating, coercive, unjustified, and malicious conduct do not establish that defendants acted beyond their supervisory authority, as those conclusory allegations are unsupported by factual allegations. Defendants note that Nikelly did not plead any facts which establish that defendants acted purely for personal reasons and contrary to the welfare of the University in causing him to retire. Moreover, defendants state that the fact Nikelly's complaint alleges intentional conduct is immaterial, for the Court of Claims has exclusive jurisdiction over all tort claims against the University Board, regardless of whether the alleged torts involve intentional conduct. Defendants assert that intentional torts committed by employees do not fall outside the scope of their employment, if the torts reasonably may be anticipated in view of the employees' duties.

Finally, defendants contend that the circuit court did not rely on

the affidavit of the associate university counsel in dismissing Nikelly's complaint and, therefore, Nikelly's arguments concerning the alleged defects in this affidavit are moot.

In his reply argument, Nikelly suggests his complaint is sufficient to withstand a motion to dismiss because it alleges "specific facts" of the defendants' conduct and "facts of the ultimate nature" concerning defendants' "personal animus" against him. Also, Nikelly states there were no parameters of defendants' authority which allowed them to inflict emotional distress upon him and to interfere with his contract of employment as a tenured professor. Furthermore, Nikelly states that in dismissing his suit on the basis of defects on the face of the complaint, the circuit court relied on section 2—615 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) rather than section 2—619 (Ill. Rev. Stat. 1989, ch. 110, par. 2—619). For this reason, Nikelly argues that if his complaint is insufficient to establish that the circuit court has subject-matter jurisdiction over his suit, he should be given an opportunity to amend his complaint.

■ The management, control, and operation of University health-care facilities is vested in the University Board. (Ill. Rev. Stat. 1989, ch. 23, pars. 1371, 1372.) The Court of Claims has exclusive jurisdiction over all tort claims against the Board. (Ill. Rev. Stat. 1989, ch. 37, par. 439.8(d).) The crucial question in cases such as this is whether a suit against a State employee is actually a suit against the State, so that the Court of Claims has exclusive jurisdiction over the plaintiff's action.

■ Whether a suit against individual State employees is actually a suit against the State depends on the issues involved and the relief sought. An action is not against the State where a State employee allegedly acted in violation of statutory or constitutional law or in excess of his authority. In such cases, actions may be prosecuted against individual State employees in the circuit court. (*Healy v. Vaupel* (1990), 133 Ill. 2d 295, 549 N.E.2d 1040.) However:

> "[W]here *** there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within [a State] employee's normal and official functions of the State, then the cause of action is only nominally against the employee." (*Robb v. Sutton* (1986), 147 Ill. App. 3d 710, 716, 498 N.E.2d 267, 272.)

In determining whether a suit against a State employee is in actuality

a suit against the State, courts also consider the impact which the litigation may have upon the State. If judgment for the plaintiff could operate to control the actions of the State or subject it to liability, the lawsuit will be deemed an action against the State. *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 470 N.E.2d 1029; *Brucato v. Edgar* (1984), 128 Ill. App. 3d 260, 470 N.E.2d 615.

■ Also of relevance, where, as here, employment relationships in the health-care field are involved, is the principle that health-care providers have the right, if not the duty, to safeguard the quality of care they provide by taking actions they deem appropriate in personnel matters. As long as the conduct of the management of a health-care provider is directed to this lawful end, personal bitterness and animosity toward persons adversely affected by such actions are immaterial. *Salaymeh v. InterQual, Inc.* (1987), 155 Ill. App. 3d 1040, 508 N.E.2d 1155.

In view of the above principles, Nikelly's complaint does not contain factual allegations which would establish defendants acted beyond their authority as directors of MHD. Nikelly alleged no specific facts which would establish that defendants harbored any personal animosity toward Nikelly, or that they committed the acts alleged for reasons other than that they perceived them to be in the best interests of MHD.

■ Moreover, personnel decisions are matters ordinarily within the normal and official functions of directors of State university health-care facilities. Although the duties to refrain from intentionally interfering with contracts and inflicting emotional distress are owed to the general public, Nikelly alleges no facts from which it may be inferred that defendants breached these duties for reasons other than what they perceived to be the best interests of MHD. In order to support interference with contract and emotional distress claims which could be tried in the circuit court in situations such as present here, the pleading of specific facts demonstrating that the sole motivation for defendants' actions was personal animus toward the plaintiff would be necessary. Nikelly pleaded no such facts.

■ The allegations of Nikelly's complaint establish that at all relevant times defendants acted within their authority as agents of the State, and the State thus could be made to answer for their actions. Therefore, this is a lawsuit against the State of which the Court of Claims has exclusive jurisdiction. The circuit court lacks subject-matter jurisdiction to adjudicate Nikelly's claims against defendants. *Healy*, 133 Ill. 2d 295, 544 N.E.2d 1240; *Robb*, 147 Ill. App. 3d 710, 498 N.E.2d 247.

*Hoffman v. Yack* (1978), 57 Ill. App. 3d 744, 373 N.E.2d 486, on which Nikelly principally relies, does not require a result different from that we reach here. In *Hoffman*, the circuit court held that an action against a department supervisor at Southern Illinois University, alleging that the defendant interfered with the plaintiff instructor's prospective economic advantage in continuing to hold a tenured teaching position, was not a suit against the State. In *Hoffman*, however, the actions complained of, which included diversion and interception of the plaintiff's mail and "urg[ing] students to fill out poor teacher rating forms concerning plaintiff" (*Hoffman*, 57 Ill. App. 3d at 746, 373 N.E.2d at 488), were so egregious that it could be inferred they were actuated by personal animus toward the plaintiff, and could not have been motivated by concern for the welfare of the university. By contrast, the actions alleged in Nikelly's complaint are insufficient to support such a conclusion.

We agree with defendants' position with regard to the affidavit filed in support of defendants' motion to dismiss. We place no reliance on it in affirming the circuit court's decision. Therefore, we need not consider Nikelly's arguments concerning the purported deficiencies in this affidavit.

■ We find no basis for ordering the circuit court to allow Nikelly to amend his complaint. Nikelly did not request that the circuit court grant him leave to amend, and he has not demonstrated in either the circuit court or in this court that an amended complaint would contain allegations sufficient to avoid dismissal. There is thus no basis for allowing Nikelly to amend his complaint. See *Deasey v. City of Chicago* (1952), 412 Ill. 151, 105 N.E.2d 727; *Chestnut v. Adeli* (1985), 131 Ill. App. 3d 24, 475 N.E.2d 260.

The circuit court orders which dismissed Nikelly's complaint and denied his motion for reconsideration are affirmed.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.