THOMAS JANES, a Minor, by his Guardian, the First National Bank of Cicero, Plaintiff-Appellant, v. ANTHONY ALBERGO, Ex'r of the Estate of Robert T. Fielding, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—90—3695

Opinion filed September 17, 1993.

Winkler & Gorey, Ltd., of North Riverside (Charles R. Winkler and Raymond J. Wengel, of counsel), for appellant.

Roland W. Burris, Attorney General, of Chicago (Deborah L. Ahlstrand, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

STATEMENT OF FACTS

Plaintiff Thomas Janes, by his guardian, the First National Bank of Cicero, appeals from the order of the circuit court of Cook County

granting defendants' section 2—619 motions (Ill. Rev. Stat. 1991, ch. 110, par. 2—619) to dismiss plaintiff's fourth amended complaint for damages allegedly sustained during plaintiff's hospitalization at the John J. Madden Mental Health Center (Madden Center), a facility owned and maintained by the State of Illinois. Anthony Albergo is executor of the estate of Robert T. Fielding, M.D. Before his death, Dr. Fielding was employed at the Madden Center, where plaintiff was a patient. The remaining defendants were also employed at Madden Center while plaintiff was a patient there.

The issues on appeal are (1) whether sovereign immunity applies, in which case the Court of Claims would have exclusive jurisdiction, and (2) if sovereign immunity does not apply, whether defendants are protected from liability under the common law doctrine of public official immunity.

The fourth amended complaint (the complaint) alleges the following facts. For a six-month period in 1983, plaintiff was a patient at Madden Center, which is a mental health care facility operated by the Illinois Department of Mental Health and Developmental Disabilities (DMHDD). (See Ill. Rev. Stat. 1991, ch. 127, par. 3; see also Ill. Rev. Stat. 1991, ch. 91½, par. 100—4.) Plaintiff was five years old at the time. Dr. Fielding was plaintiff's attending psychiatrist from the time of plaintiff's admission on March 24, 1983, until Dr. Fielding's death on May 25, 1983. According to the complaint, Dr. Fielding examined plaintiff and diagnosed his condition as an adjustment disorder although plaintiff was actually suffering from depression. After Dr. Fielding's death, Larwut Wongsarnpigoon, M.D., temporarily assumed Dr. Fielding's duties. Later, Joseph Mason, M.D., became plaintiff's attending psychiatrist. The complaint alleges that Dr. Wongsarnpigoon took Dr. Fielding's diagnosis as correct. Dr. Wongsarnpigoon and Dr. Mason were in charge of the therapeutic team which was responsible for plaintiff's care. The following defendants were members of the therapeutic team: Robert Fritz, a family therapist; Bruce Thompson, the unit director; Virginia Haffey, a mental health specialist; Mirian Warner, a registered nurse; Louise Sparkman, a licensed practical nurse; and Myra Horton, a licensed practical nurse. Art Glenn was coordinator of the Peanut and Super Peanut programs in which plaintiff participated while at Madden Center. Mary Marone, R.N., was the supervising nurse. The complaint alleges that the 11 defendants are medical care providers educated and trained in psychiatry or psychology and that all defendants were, at all times pertinent to this lawsuit, performing their professional duties at the Madden Center. The

complaint also states, however, that the defendants' conduct exceeded their authority.

The complaint alleges that, during plaintiff's stay at Madden Center, he was placed under the supervision of a 12-year-old patient who on several occasions forced plaintiff to engage in sexual acts with him, resulting in physical and mental injury to plaintiff.

The complaint includes four counts. Count I alleges negligence by Drs. Fielding, Wongsarnpigoon, and Mason, each of whom is a licensed medical doctor. Plaintiff alleges that the doctors failed to properly diagnose and chart plaintiff's condition and to render proper care; that they failed to properly supervise and control patients, and to evaluate the condition of patients likely to cause injury and separate them from other patients; and that they improperly authorized a 12-year-old patient to supervise or control the plaintiff, contrary to a hospital policy prohibiting placing a minor under the supervision of another minor. The complaint alleges that, as a result of one or more of these acts, plaintiff was forced by the 12-year-old to engage in sexual acts with him, causing physical and mental injury to plaintiff.

Count II states essentially the same facts, alleging that the conduct of the three doctors was wilful and wanton in that their conduct indicated a course of action showing indifference to, or conscious disregard for, plaintiff's well-being and safety. Count II alleges that the doctors had prior knowledge of the 12-year-old's dangerous propensities and continued to allow him to supervise plaintiff "when they knew or should have known of his deviate actions toward the minor plaintiff."

Counts III and IV address the conduct of the remaining eight defendants who are not alleged to be medical doctors but are otherwise alleged to be health care professionals. Count III alleges negligence; count IV alleges wilful and wanton conduct. Both counts III and IV allege essentially the same conduct by these eight defendants as that alleged in count I against the doctors, except there is no allegation as to diagnosis and charting of plaintiff's condition. Counts III and IV do not allege prior knowledge of the 12-year-old's dangerous propensities or knowledge that sexual activity was occurring between the 12-year-old and the plaintiff.

Defendants filed motions to dismiss, pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619), on the grounds that (1) sovereign immunity applies so that the circuit court is without jurisdiction, and (2) even if the circuit court has jurisdiction, the common law doctrine of public official immunity bars relief. The trial court granted the motions to dismiss as

to all defendants on all counts. Plaintiff's motion to reconsider was denied. Plaintiff appeals from the order dismissing the fourth amended complaint and from the denial of plaintiff's motion to reconsider.

OPINION

The granting of a motion to dismiss under section 2—619 of the Illinois Code of Civil Procedure is proper only if it appears that no set of facts can be proven which would entitle plaintiff to recovery. (*Campbell v. White* (1991), 207 Ill. App. 3d 541, 548, 566 N.E.2d 47, 51.) Where defects do not appear on the face of the pleadings, affidavits can be filed stating affirmative matters which justify dismissal. *Campbell*, 207 Ill. App. 3d at 547-48, 566 N.E.2d at 51.

Defendants contend that the complaint does not allege facts which, if proven, entitle plaintiff to recover from defendants. Defendants argue, first of all, that the present action is, in effect, a tort action against the State of Illinois which can only be brought in the Court of Claims. Defendants also contend that, even assuming *arguendo* that the circuit court has subject matter jurisdiction, dismissal was proper because all defendants have public official immunity, which bars plaintiff's relief.

Although plaintiff's brief tends to ignore the distinction, sovereign immunity and public official immunity are two separate doctrines. (See *Campbell*, 207 Ill. App. 3d at 548-49, 566 N.E.2d at 52.) The sovereign immunity doctrine is derived from the theory that "the king could not be made subject to suit without his permission." (*American Family Insurance Co. v. Seeber* (1991), 215 Ill. App. 3d 314, 317, 574 N.E.2d 1222, 1224.) Therefore, its primary goal is to protect the State from being sued except under the terms established by the State itself.

The doctrine has not been confined, however, to actions which name the State as a defendant. "Such a literal interpretation would have substantially impaired the doctrine of sovereign immunity from suit because, by coercing the conduct of State officers in an action to which they were defendants, the same result could have been achieved as in a case in which the State itself was a formal defendant." (*Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 36, 101 N.E.2d 71, 72.) Sovereign immunity applies in an action naming a State employee as defendant where the impact on the State makes it, for all practical purposes, a suit against the State. See *Healy v. Vaupel* (1990), 133 Ill. 2d 295, 308, 549 N.E.2d 1240, 1247.

Although the State's sovereign immunity was abolished under the 1970 Constitution, "[e]xcept as the General Assembly may provide by law" (Ill. Const. 1970, art. XIII, §4), the General Assembly reinstated sovereign immunity by enacting the Court of Claims Act. (See Ill. Rev. Stat. 1991, ch. 37, par. 439.1 *et seq.*) That act provides that actions against the State must be brought in the Court of Claims and limits the amount of monetary damages which can be awarded in those actions. (Ill. Rev. Stat. 1991, ch. 37, par. 439.8.) Thus the doctrine of sovereign immunity, as resurrected under the Court of Claims Act, is jurisdictional in nature.

Public official immunity is a common law doctrine which "rests on the theory that government officials should not be impeded from acting in ways they perceive are in the public's best interest because of fears of personal liability." (*Campbell*, 207 Ill. App. 3d at 553, 566 N.E.2d at 55.) "That doctrine provides that State officials and employees are protected from personal liability for actions taken in the exercise of their official discretion. [Citations.] To be protected, the actions taken must be within the scope of the official's authority and not as a result of malicious motives." (*Hanzel Construction, Inc. v. Wehde & Southwick, Inc.* (1985), 130 Ill. App. 3d 196, 200, 474 N.E.2d 38, 41-42.) As such, public official immunity is directly aimed at protecting State employees personally, rather than directly protecting the interests of the State. It provides government employees with a defense on the merits but is not jurisdictional in nature.

If sovereign immunity applies in the present case, we need not consider public official immunity because the circuit court is without jurisdiction. (See *Henderson v. Beckman Texaco* (1991), 213 Ill. App. 3d 1054, 1059-60, 573 N.E.2d 369, 373.) However, if sovereign immunity does not apply, we must consider whether defendants can be protected from liability by the doctrine of public official immunity. (See *Campbell*, 207 Ill. App. 3d at 552-53, 566 N.E.2d at 54.) We will, therefore, deal with the issues of sovereign immunity and public official immunity separately.

SOVEREIGN IMMUNITY

■ As noted above, under the doctrine of sovereign immunity, the State of Illinois cannot be sued in any court, except where the State consents to be sued or suit is brought in the Court of Claims. (See Ill. Rev. Stat. 1991, ch. 127, par. 801.) The Court of Claims Act gives exclusive jurisdiction to the Court of Claims in lawsuits against the State of Illinois, including contract actions, tort actions, and actions founded upon Illinois laws. (Ill. Rev. Stat. 1991, ch. 37, par.

439.8.) Regarding tort actions, section 8(d) of the Court of Claims Act gives the Court of Claims exclusive jurisdiction over the following cases:

"[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit *** provided, that an award for damages in a case sounding in tort shall not exceed the sum of $100,000 to or for the benefit of any claimant. *** The defense that the State *** is not liable for the negligence of its officers, agents, and employees in the course of their employment is not applicable to the hearing and determination of such claims." Ill. Rev. Stat. 1991, ch. 37, par. 439.8(d).

■ The fact that Madden Center and the DMHDD are not named as defendants in this action is not dispositive of the sovereign immunity question. The rule is clear that a plaintiff cannot evade the application of sovereign immunity by bringing an action nominally against an employee or agent of the State when the claim is really against the State. *Healy v. Vaupel,* 133 Ill. 2d at 308, 549 N.E.2d at 1247; *Robb v. Sutton* (1986), 147 Ill. App. 3d 710, 712-13, 498 N.E.2d 267, 270.

The determination as to whether an action is an action against the State or is against only the individual depends on the issues involved and the relief sought. (*Healy,* 133 Ill. 2d at 308, 549 N.E.2d at 1247.) As to the issues involved, Illinois cases have established three criteria to consider in determining whether an action is really against the State:

"(1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained of actions involve matters ordinarily within that employee's normal and official functions of the State." (*Robb,* 147 Ill. App. 3d at 716, 498 N.E.2d at 272.)

(See also *Healy v. Vaupel,* 133 Ill. 2d at 309, 549 N.E.2d at 1247; *Campbell,* 207 Ill. App. 3d at 549, 566 N.E.2d at 52.) Where all three of the above criteria are met, the doctrine of sovereign immunity will apply, as if the action had been brought against the State directly. (See *Robb,* 147 Ill. App. 3d at 716, 498 N.E.2d at 272.) In addition, however, a court must consider the relief sought. Sovereign immunity will apply whenever a judgment for plaintiff could either "operate to control the actions of the State or subject it to liability." *Robb,* 147 Ill. App. 3d at 713, 498 N.E.2d at 270.

■ Plaintiff contends that sovereign immunity cannot apply in this case because defendants' conduct was beyond the scope of their authority in that their actions were allegedly wilful and wanton and they allegedly violated a hospital policy prohibiting placing a minor patient under the supervision or control of another minor patient. We do not agree that the facts alleged show conduct beyond the scope of defendants' authority.

First, we note that an employee acting in furtherance of the employer's purposes can engage in wilful and wanton conduct, which is a form of negligence, without exceeding the scope of authority. (*Campbell*, 207 Ill. App. 3d at 551, 566 N.E.2d at 53; see also *Robb*, 147 Ill. App. 3d at 714, 498 N.E.2d at 271.) Since the facts pleaded in this case do not allege that defendants' conduct was for any purpose other than what defendants perceived to be in furtherance of the best interests of their employer, the Madden Center, defendants' conduct for such purpose cannot be considered beyond the scope of their employment. See *Nikelly v. Stubing* (1990), 204 Ill. App. 3d 870, 876, 562 N.E.2d 360, 364.

Secondly, plaintiff contends that defendants exceeded the scope of their authority by violating the hospital policy against supervision by a minor patient. However, a State employee's violation of policy, regulation, or even statute does not necessarily avert the application of sovereign immunity. In *Campbell*, the plaintiff claimed that a State trooper violated a statute and a regulation while answering an emergency call. The court found that although such violations may have been *prima facie* evidence of negligence, the trooper's actions were nevertheless within the scope of his authority because he did not act for a purpose unrelated to his employment. (*Campbell*, 207 Ill. App. 3d at 552, 566 N.E.2d at 53.) The court wrote, "Even assuming plaintiff correctly alleges defendant's acts violate the statute and regulations pertaining to the use of oscillating lights and sirens, defendant can act negligently or wilfully and wantonly without exceeding the scope of his authority." *Campbell*, 207 Ill. App. 3d at 551, 566 N.E.2d at 53.

In *Ellis v. Board of Governors of State Colleges & Universities* (1984), 102 Ill. 2d 387, 466 N.E.2d 202, the court reasoned that, since section 8(a) of the Court of Claims Act grants exclusive jurisdiction to the Court of Claims for "[a]ll claims against the state founded upon any law of the State of Illinois" (Ill. Rev. Stat. 1991, ch. 37, par. 439.8(a)), the violation of a statute by a State officer cannot, by itself, preclude the application of sovereign immunity. The court in *Ellis* ruled that sovereign immunity applied, not because a statute was vio-

lated, but because a judgment for the plaintiff would have subjected the State to direct liability to plaintiff for back pension benefit payments. See *Ellis,* 102 Ill. 2d at 394-95, 466 N.E.2d at 206.

Plaintiff cites *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 470 N.E.2d 1029, for the proposition that where a State officer acts illegally, or in excess of delegated authority, an action can be maintained in the circuit court against the officer individually. We note, however, that *Senn Park,* unlike *Ellis* and *Campbell,* and unlike the present case, did not involve a present claim for damages. Instead, *Senn Park* was a *mandamus* and declaratory judgment case in which the plaintiff sought to compel a public official to conform his future acts to statutory requirements, *i.e.,* to authorize medicaid reimbursement according to statutory provisions. The court stated that " 'an action to compel a public official to perform a clear and mandatory duty is not a suit against the State.' " (*Senn Park,* 104 Ill. 2d at 189, 470 N.E.2d at 1039, quoting *City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 124, 384 N.E.2d 310, 312-13 (a declaratory judgment suit to compel an official to comply with established valid procedure).) This distinction between a suit to compel future action as opposed to a present claim for damages was articulated in *Senn Park* itself when it quoted *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223, stating, " 'Plaintiff is not attempting to enforce a present claim against the State, but, rather, seeks to enjoin the defendant from taking actions in excess of his delegated authority and in violation of plaintiff's protectable legal interests. Such a suit does not contravene the immunity prohibition.' " (*Senn Park,* 104 Ill. 2d at 188-89, 470 N.E.2d at 1039, quoting *Bio-Medical Laboratories, Inc.,* 68 Ill. 2d at 548, 370 N.E.2d at 227.) Plaintiff in the present case does not seek to compel or prohibit future acts of defendants in performance of their official duties. Rather, the complaint seeks to recover based on a present damages claim and, as such, is governed by the rationale of *Campbell* and *Ellis.*

■ However, plaintiff also contends that sovereign immunity is inapplicable in this case because the duty which defendants owed to plaintiff was independent of the fact of their State employment. (See *Robb,* 147 Ill. App. 3d at 715-16, 498 N.E.2d at 272.) Plaintiff urges that the duty owed to plaintiff by defendants did not arise from the fact that defendants are Madden Center employees, but rather the duty arose out of the relationship between the plaintiff as a patient and the defendants as professional health care providers. We agree with that contention.

This distinction is supported in *Madden v. Kuehn* (1978), 56 Ill. App. 3d 997, 372 N.E.2d 1131, and in *Watson v. St. Annes Hospital* (1979), 68 Ill. App. 3d 1048, 386 N.E.2d 885. In *Madden*, a wrongful death action was brought against the estate of a Department of Corrections physician. The physician had allegedly failed to properly diagnose and treat an inmate patient who had a hereditary disease, resulting in the patient's death. *Madden*, 56 Ill. App. 3d at 998-99, 372 N.E.2d at 1132.

As in the present case, the defendant in *Madden* sought dismissal on the grounds of sovereign immunity and public official immunity. The court found neither type of immunity applied. Regarding sovereign immunity, the suit could not be considered to be against the State because the duties which the physician allegedly breached—the duties to properly diagnose and treat the inmate's condition—were duties which "every physician owes his patient, rather than obligations incurred solely by virtue of holding a public office." (*Madden*, 56 Ill. App. 3d at 1001, 372 N.E.2d at 1133-34.) The court pointed out that the physician, in examining and treating the inmate, was not acting in an administrative or legislative capacity. *Madden*, 56 Ill. App. 3d at 1001, 372 N.E.2d at 1133-34.

In *Watson*, the court adhered to the reasoning in *Madden*. (*Watson*, 68 Ill. App. 3d at 1053, 386 N.E.2d at 888.) *Watson* involved four consolidated tort actions, three actions against doctors and one action against doctors and a nurse. All four cases included allegations of improper medical treatment by defendants who worked for the University of Illinois. (*Watson*, 68 Ill. App. 3d at 1049-51, 386 N.E.2d at 886.) An affidavit of two defendants stated that only doctors employed by the State of Illinois and subject to the supervision and control of the University of Illinois Board of Trustees were allowed to treat plaintiff, whom they regarded not as their private patient, but as a patient of the University of Illinois Hospital. (*Watson*, 68 Ill. App. 3d at 1051, 386 N.E.2d at 887.) The court held that the circuit court had jurisdiction. The court quoted *Madden* as to defendants' duty being that duty which every physician owes to every patient. *Watson*, 68 Ill. App. 3d at 1053, 386 N.E.2d at 888.

Defendants ask this court not to follow the *Madden* and *Watson* opinions. They contend that the Illinois Supreme Court repudiated the *Madden* and *Watson* decisions in *Healy v. Vaupel* (1990), 133 Ill. 2d 295, 549 N.E.2d 1240. We disagree. *Healy*, which did not involve medical care providers, was an action by a student for damages for personal injuries allegedly caused by the negligence of two athletic directors, a gymnastics coach, and a gymnastics team trainer at Northern

Illinois University. (*Healy*, 133 Ill. 2d at 298-99, 549 N.E.2d at 1242.) The plaintiff in *Healy* argued that the action was not against the State and the circuit court had jurisdiction because, analogous to the physicians in *Madden*, the defendants owed plaintiff the same duty that they would have owed to participants in a private gymnastics program. *Healy*, 133 Ill. 2d at 312, 549 N.E.2d at 1249.

The supreme court in *Healy* found that the doctrine of sovereign immunity applied, the action being, in effect, against the State. (*Healy*, 133 Ill. 2d at 317, 549 N.E.2d at 1251.) Although the *Healy* decision mentioned that the *Madden* case had been criticized in a law review article "as working an improper severance of the relationship between master and servant," the supreme court expressly refused to overrule *Madden*. (*Healy*, 133 Ill. 2d at 312-13, 549 N.E.2d at 1249, citing LeBlang, *Medical Negligence and the Court of Claims: A Dilemma for the Sovereign's Doctors*, 68 Ill. B.J. 534 (1980).) Contrary to plaintiff's contention, our supreme court in *Healy* did not reject the duty distinction drawn in *Madden*. The court distinguished between the independent duty owed by a doctor to his patient based on the doctor-patient relationship and the derivative duty owed to the student by the gymnastics department employees because they worked for a State university. (See *Healy*, 133 Ill. 2d at 313, 549 N.E.2d at 1249.) The court stated:

"Essential to the court's holding in *Madden* was the view that the duty of care owed by the physician arose independently of his status as an employee of the State; that conclusion may be said to rest on the special nature of the doctor-patient relationship. We do not believe that the same conclusion may be reached here." *Healy*, 133 Ill. 2d at 313, 549 N.E.2d at 1249.

This distinction was controlling in *Kiersch v. Ogena* (1992), 230 Ill. App. 3d 57, 595 N.E.2d 696, when it allowed suit to be maintained in the circuit court by an Illinois State University student against a university physician in connection with injuries sustained when the physician negligently treated a wart. (*Kiersch*, 230 Ill. App. 3d at 57-58, 595 N.E.2d at 697.) The court found that the action was not against the State because the duty allegedly breached by the doctor arose independently of her State employment and was no different than the duty owed by any physician to a patient. *Kiersch*, 230 Ill. App. 3d at 63, 595 N.E.2d at 701.

In reaching its conclusion, the *Kiersch* court analogized the doctor's duty to the duty in *Currie v. Lao* (1992), 148 Ill. 2d 151, 592 N.E.2d 977. In *Currie*, a State trooper's patrol car collided with a truck while answering a nonemergency call. The Illinois Supreme

Court found that the trooper's duty to the truck driver did not derive from the fact of his government employment, but was the same duty of care owed by any driver to the general public. (*Currie*, 148 Ill. 2d at 163, 592 N.E.2d at 982.) The court stated, "the proper inquiry is to analyze the source of the duty the employee is charged with breaching in committing the allegedly negligent act." (*Currie*, 148 Ill. 2d at 159, 592 N.E.2d at 980.) The court in *Kiersch* correctly stated that it viewed the *Currie* opinion as reaffirming *Madden* and *Watson*, insofar as it focused on the independent source of the duty allegedly breached. *Kiersch*, 230 Ill. App. 3d at 62, 595 N.E.2d at 700.

*Kilcoyne v. Paelmo* (1990), 204 Ill. App. 3d 139, 562 N.E.2d 231, cited by defendants, is distinguishable. In that case, the court held sovereign immunity applied in a suit against medical care providers at a State mental health care facility. A patient had been admitted to the facility when his wife filed a petition for his involuntary admission. The defendants examined the patient and determined he could reasonably be expected to inflict serious physical harm against himself or others. (*Kilcoyne*, 204 Ill. App. 3d at 141, 562 N.E.2d at 231-32.) Prior to the scheduled court hearing, the patient requested voluntary admission, which the court granted while dismissing the wife's petition for involuntary admission. The patient subsequently exercised his statutory right to be released. (*Kilcoyne*, 204 Ill. App. 3d at 141, 562 N.E.2d at 232; see also Ill. Rev. Stat. 1987, ch. 91½, pars. 3—403, 3—602 (providing for discharge within five days of patient's written notice unless petition for involuntary admission is filed and two certificates of physicians or clinical psychologists are filed showing need for immediate hospitalization).) After release, he killed his father-in-law and held his stepchildren at knifepoint. (*Kilcoyne*, 204 Ill. App. 3d at 142, 562 N.E.2d at 232.) The wife sued the mental health center employees, apparently claiming that they should have instituted procedures to retain her husband. (See *Kilcoyne*, 204 Ill. App. 3d at 142, 562 N.E.2d at 232.) The *Kilcoyne* court itself distinguished its facts from those in *Madden* and *Watson*. The court found that the duties which a doctor generally owes to a patient do not include a decision as to a patient's legal rights regarding involuntary institutionalization and the invocation of the legal procedures which would result from such a decision. Those duties derive solely by virtue of the defendants' administrative responsibility arising from employment with the State. (*Kilcoyne*, 204 Ill. App. 3d at 145, 562 N.E.2d at 234.) Also, the *Kilcoyne* court found that sovereign immunity applied because the lawsuit would affect the actions of the State by requiring the redraft-

ing of policies and guidelines. *Kilcoyne*, 204 Ill. App. 3d at 145, 562 N.E.2d at 234.

No contention is made in the present case that the Madden Center will be required to redraft policies or procedures if plaintiff is granted relief. Neither is it argued that the duties owed by defendants involve considerations of the State's legal right to keep plaintiff institutionalized, as in *Kilcoyne*, rather than involving questions of proper care and treatment, as in *Madden, Watson,* and *Kiersch.*

Accordingly, the circuit court has jurisdiction over claims filed against the three doctors since their duties derive independently from their professional relationships with their patients. Manifestly, the doctor's duties and the patient's correlative rights are inherent in the doctor-patient relationship and are derived from the standards imposed by the profession itself, including certification and licensing requirements and disciplinary procedures. A physician's duty is to exercise the same degree of knowledge, skill, and care which a reasonably well-qualified physician in the same or similar community would use under similar circumstances. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 242, 489 N.E.2d 867, 872.) That duty is derived from the doctor's status as a licensed physician and is not dependent upon the physician's employment status. (See *Madden*, 56 Ill. App. 3d at 1001, 372 N.E.2d at 1134.) Accordingly, under this rationale, the duty applies regardless of whether a physician is in private practice, is employed by a private facility, or is employed by a governmental entity.

The duties of the four defendant nurses likewise derive from their relationships with their patients and are defined by professional nursing standards. Accordingly, under this rationale, their duties to plaintiff exist, as is the case with the doctors, independently of their State employment. See *Watson*, 68 Ill. App. 3d at 1052-53, 386 N.E.2d at 888-89 (duties of doctors and nurses were treated in identical manner).

Under the posture of the pleadings it appears that the duties of the remaining defendants—the family therapist, the mental health specialist, the unit director, and the program coordinator—like the duties of the physicians and nurses, arose in the context of their professional relationships with plaintiff, rather than as a result of their employment with the State. (See *Horak v. Biris* (1985), 130 Ill. App. 3d 140, 474 N.E.2d 13 (court sustained malpractice action against certified social worker on grounds that his duties were generated by the professional standards which regulate his professional relationships with his patients); see also *Midamerica Trust Co. v. Moffatt* (1987), 158 Ill. App. 3d 372, 378-79, 511 N.E.2d 964, 968-69, discussed later

in connection with public official immunity.) The complaint alleges that all defendants are health care providers who were engaged in their professional duties. We note that no defendant has denied membership in a recognized health care profession. The same rationale applies to them regarding the independent source of their duties as applies to the defendant doctors. As members of their respective professions, their duties to plaintiff would have been derived from their professional relationships with the plaintiff as their patient, and their conduct would be subject to the standards imposed by their professions. See *Midamerica Trust Co.*, 158 Ill. App. 3d at 378-79, 511 N.E.2d at 968-69; see also *Horak*, 130 Ill. App. 3d at 145-46, 474 N.E.2d at 17-18.

■ Defendants lastly contend that the entire action is one against the State because the State has indemnified employees of the Department of Mental Health and Developmental Disabilities (DMHDD) (see Ill. Rev. Stat. 1991, ch. 127, par. 1302). Defendants note that, shortly after the *Madden* decision, the legislature amended the State Employee Indemnification Act to include physicians in the Department of Corrections. Later, DMHDD physicians were included. (See Ill. Rev. Stat. 1991, ch. 127, par. 1302.) Defendants conclude such indemnification expresses a legislative intent to subject the State to liability where the plaintiff prevails and to require that such suits be brought only in the Court of Claims. We disagree.

While suits which could subject the State to liability must be heard in the Court of Claims, the State's obligation to indemnify its employees for liability incurred by them does not constitute the State's assumption of direct liability. As stated in *Kiersch*:

"[D]efendant confuses liability with indemnity—that is, defendant tries to equate ISU's decision to indemnify its employees with direct liability of ISU for its employees' negligent conduct. The two are not the same, and the decision of ISU to indemnify its employees does not deprive the circuit courts of subject-matter jurisdiction over claims otherwise properly brought in the circuit court." (Emphasis omitted.) *Kiersch*, 230 Ill. App. 3d at 63-64, 595 N.E.2d at 701.

See also *Watson*, 68 Ill. App. 3d at 1053-54, 386 N.E.2d at 889 (where the court analogously found that a requirement that the State provide professional liability insurance would not affect the sovereign immunity analysis).

Moreover, the language of the indemnification statute itself does not allow such an interpretation. Section 2(d) of the State Employee Indemnification Act indemnifies State employees "unless the court or

*jury* finds that the conduct or inaction which gave rise to the claim or cause of action was intentional, wilful or wanton misconduct and was not intended to serve or benefit interests of the State." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 127, par. 1302(d).) The Court of Claims Act does not provide for jury trials. (See Ill. Rev. Stat. 1991, ch. 37, par. 439.16.) The indemnification statute's reference to findings of a jury would have no meaning if the legislature had intended that all claims in which indemnification by the State might occur be heard only by the Court of Claims.

This conclusion was also reached in *Kiersch*, where the defendant physician made essentially the same argument which defendants make in the present case. (See *Kiersch*, 230 Ill. App. 3d at 63-64, 595 N.E.2d at 701.) In rejecting the physician's argument, the court stated:

"[S]ection 2(d) of the Act (Ill. Rev. Stat. 1989, ch. 127, par. 1302(d)) speaks of findings made by 'the court or jury,' thereby clearly indicating that the legislature contemplated that actions against State employees for damages, for which the State would be obligated to indemnify the employees under the Act, might be brought in circuit court, as opposed to the Court of Claims. This conclusion follows because the Court of Claims conducts its judicial business without juries. See Ill. Rev. Stat. 1989, ch. 37, par. 439.16." *Kiersch*, 230 Ill. App. 3d at 64, 595 N.E.2d at 701.

We also note that the indemnification statute was amended in response to *Madden*. (See LeBlang, *Medical Negligence and the Court of Claims: A Dilemma for the Sovereign's Doctors*, 68 Ill. B.J. 534, 541-43 (1980).) Had the legislators intended for the State to preclude circuit court jurisdiction by directly assuming liability in the Court of Claims, they could have expressly so stated. See *Kaiser v. Emrich* (1980), 84 Ill. App. 3d 775, 777, 406 N.E.2d 207, 209.

We acknowledge that the case of *Oppe v. State of Missouri* (1988), 171 Ill. App. 3d 491, 525 N.E.2d 1189, reaches an opposite conclusion regarding the effect of indemnification. In that case, the Fourth District Appellate Court held that a suit against State troopers was, in effect, a suit against the State because the State was required to indemnify the troopers. (*Oppe*, 171 Ill. App. 3d at 493-94, 525 N.E.2d at 1191.) We note, however, that the troopers were engaged in a high speed chase of an escapee from a correctional facility. (*Oppe*, 171 Ill. App. 3d at 493, 525 N.E.2d at 1191.) Under those conditions, sovereign immunity would have applied regardless of the indemnity statute

because the troopers' duty of care arose from the fact of their State employment. See *Campbell*, 207 Ill. App. 3d at 552, 566 N.E.2d at 54.

For the forgoing reasons, we conclude that the trial court's dismissal of the action predicated on the doctrine of sovereign immunity was erroneous.

## PUBLIC OFFICIAL IMMUNITY

We now consider public official immunity, the second ground upon which defendants seek to justify the dismissal of this action. There is no dispute that public official immunity does not extend to ministerial acts. Public officials are immune from liability only for discretionary acts. (*Watson*, 68 Ill. App. 3d 1048, 386 N.E.2d 885.) Thus, the critical question is whether defendants' conduct in treating plaintiff was ministerial or discretionary. See *Midamerica Trust Co. v. Moffatt* (1987), 158 Ill. App. 3d 372, 376, 511 N.E.2d 964, 967.

In determining whether an act is discretionary for public official immunity purposes, the act, in addition to involving skill or judgment, must be governmental in character. (See *Lusietto v. Kingan* (1969), 107 Ill. App. 2d 239, 244, 246 N.E.2d 24, 27; see also *Christensen v. City of Bloomington* (1986), 147 Ill. App. 3d 702, 704, 498 N.E.2d 259, 261.) "Cases holding that State employees' conduct was within their official discretion and subject to public official's immunity have generally involved actions and duties unique to a particular public office." (*American Family Insurance Co.*, 215 Ill. App. 3d at 321, 574 N.E.2d at 1226; see also *Madden*, 56 Ill. App. 3d at 1001, 372 N.E.2d at 1133.) In this respect, there is some overlap with the sovereign immunity doctrine.

In *Madden*, the court held that public official immunity did not apply to a physician's diagnosis and treatment of an inmate. (*Madden*, 56 Ill. App. 3d at 1002, 372 N.E.2d at 1134-35.) The court commented:

> "The underlying public policy that public officials ought to be free to exercise their judgment based upon '[their] best perception of public needs' [citation], does not apply when the action of the public official does not involve a 'governmental' decision. *** In the case before us, [the doctor's] actions as set forth in the complaint were not governmental in character and were, therefore, not 'discretionary.' There is nothing unduly burdensome in holding that physicians employed by the Department of Corrections owe inmates whom they treat the same duty of care which they owe their patients in private practice." (*Madden*, 56 Ill. App. 3d at 1002, 372 N.E.2d at 1135.)

The physicians and nurse in *Watson*, likewise, were not protected by public official immunity because they were "engaged in the same endeavors and functions as those performed by their counterparts in private practice." *Watson*, 68 Ill. App. 3d at 1055, 386 N.E.2d at 890.

The independent duty distinction has been used in other types of cases to determine whether an act is governmental in character. In *American Family Insurance Co.*, the operation of a snowplow was held not to be governmental in character because of the independent duty the driver owed to the public to operate his vehicle in a safe manner. (*American Family Insurance Co.*, 215 Ill. App. 3d at 321-22, 574 N.E.2d at 1227.) In *Midamerica Trust Co.*, the court found that public official immunity protected a Department of Children and Family Services (DCFS) noncertified case worker from liability because the duty to two minor children was owed by DCFS rather than the case worker, DCFS having been appointed guardian. (*Midamerica Trust Co.*, 158 Ill. App. 3d at 381, 511 N.E.2d at 969.) However, the court in *Midamerica Trust Co.* indicated that, had the social worker been certified under the Social Workers Registration Act (Ill. Rev. Stat. 1985, ch. 111, par. 6307), she would have had an individual duty to the children based on the social worker-client relationship. (*Midamerica Trust Co.*, 158 Ill. App. 3d at 379, 511 N.E.2d at 967.) The court distinguished the facts of the case from those in *Horak v. Birus* (1985), 130 Ill. App. 3d 140, 474 N.E.2d 13, mentioned earlier:

> "In the instant case, there is no allegation that defendant was a certified social worker, as was the defendant in *Horak*; that she was licensed by the State in any capacity; or that she held herself out as a State licensee. Plaintiff simply describes defendant as a social worker in a manner that indicates use of that term in a generalized sense. A more proper description of an individual in defendant's position would be a 'caseworker,' a word which is often used interchangeably with 'social worker.'" *Midamerica Trust Co.*, 158 Ill. App. 3d at 378, 511 N.E.2d at 969.

Defendants rely on *Anderberg v. Newman* (1972), 5 Ill. App. 3d 736 (abstract of opinion), in which physicians employed by the State of Illinois were protected under the doctrine of public official immunity in a suit claiming that they negligently released a patient whom they knew to be suicidal. However, in *Anderberg*, as in *Kilcoyne*, the exercise of discretion to discharge a patient from a State mental health facility or to retain him is far more governmental in character than the decisions in the present case regarding placement

for treatment in certain hospital programs. See *Kilcoyne*, 204 Ill. App. 3d at 145, 562 N.E.2d at 234.

Furthermore, public official immunity, in this case, would not apply because the breaches charged against defendants are premised on their failure to perform in accordance with a hospital policy. Plaintiff alleges the existence of a hospital policy which prohibits supervision or control of a minor patient by another minor patient. Taking this fact to be true for purposes of the section 2—619 motion, the compliance or noncompliance with that policy would arguably involve a relatively ministerial act insofar as it does not purport to leave an employee free to set his or her own policy or to exercise a wide latitude of judgment. A ministerial act is one which an employee "performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own discretion upon the propriety of the act being done." (*Larson v. Darnell* (1983), 113 Ill. App. 3d 975, 977, 448 N.E.2d 249, 250-51.) This principle was applied in *Campbell*, where the court, in considering an Illinois State Police procedure regarding use of flashing lights and sirens during a pursuit, stated that if the procedure left no discretion and required the officer to activate his flashing lights and siren, "the public-official immunity could not be invoked on his behalf." *Campbell*, 207 Ill. App. 3d at 555, 566 N.E.2d at 56.

The case of *Kinzer v. City of Chicago* (1989), 128 Ill. 2d 437, 539 N.E.2d 1216, cited by defendant, seems to postulate an exception to the rationale in *Campbell*. There, the Illinois Supreme Court held that a public official was protected by public official immunity for a statutory violation involving expenditures made without proper appropriation where the expenditures were approved by superiors and the official acted in good faith in following a practice established by his predecessors who had designated a special revenue fund which he reasonably presumed to be valid under the statute. (*Kinzer*, 128 Ill. 2d at 445-46, 539 N.E.2d at 1220.) However, even under *Kinzer*, defendants are not protected by public official immunity since it is not alleged that defendants followed the practices of predecessors or that they had reason to believe that they were in fact following established hospital policy.

For the reasons stated above, we find that defendants' section 2—619 motions for dismissal of this action were erroneously granted. Insofar as defendants' motions did not negate the allegations in the pleadings concerning the professional status of any of the defendants, dismissal under the grounds of either sovereign immunity or public of-

ficial immunity at this stage of the proceedings would be unwarranted.

For the foregoing reasons, the judgment of the circuit court dismissing all four counts of the complaint is reversed and remanded for further proceedings.

Reversed and remanded.

McNULTY and COUSINS, JJ., concur.