(No. 90482

HEIDI HAPPEL *et al.*, Appellees, v. WAL-MART
STORES, INC., d/b/a Wal-Mart Pharmacy, Appel-
lant.

*Opinion filed March 21, 2002.*

James F. McCluskey, Mark W. Monroe and James P. Marsh, of Momkus, Ozog & McCluskey L.L.C., of Downers Grove, for appellant.

Kenneth C. Chessick, John W. Fisk, Patricia E. Raymond and Joan R. Stohl, all of Schaumburg, for appellees.

S. Lawrence Kocot and Don L. Bell II, of Alexandria, Virginia, for amicus curiae National Association of Chain Drug Stores, Inc.

John F. Atkinson, Dale J. Atkinson and Julia C. Works, of Evanston, for amicus curiae National Association of Boards of Pharmacy.

JUSTICE McMORROW delivered the opinion of the court:

The central issue in this appeal is whether a pharmacy has a duty to warn about a known drug contraindi-

cation[1] where the pharmacy is aware of a customer's drug allergies and knows that the medication prescribed by the customer's physician is contraindicated for a person with those allergies. Plaintiff Heidi Happel, who is allergic to aspirin, ibuprofen, and acetaminophen, experienced a severe reaction after taking Toradol, a pain reliever prescribed by her physician, Dr. Zbigniew T. Lorenc. Toradol should not be taken by persons who are allergic to aspirin and other nonsteroidal anti-inflammatory drugs (NSAIDs). Heidi and her husband, plaintiff Kent Happel, subsequently brought a negligence action against Dr. Lorenc and Wal-Mart Stores, Inc., whose pharmacy in McHenry, Illinois, filled the prescription. Plaintiffs settled with Dr. Lorenc, and the trial court granted Wal-Mart's motion for summary judgment. The appellate court reversed (316 Ill. App. 3d 621), and we granted Wal-Mart's petition for leave to appeal. 177 Ill. 2d R. 315. For the reasons set forth below, we affirm the judgment of the appellate court.

## BACKGROUND

On August 4, 1993, Heidi called Dr. Lorenc's office complaining of severe menstrual cramps. She sought a more effective pain reliever, and Dr. Lorenc prescribed Toradol. His office telephoned the prescription to the Wal-Mart pharmacy in McHenry, Illinois. Dr. Lorenc had been treating Heidi since December 1992, and he knew of her drug allergies. However, he stated in his deposition that on August 4, 1993, he did not know that Toradol was contraindicated for patients with allergies to aspirin. If he had known this, he would not have prescribed Toradol for Heidi.

Prior to August 4, 1993, Heidi had been to the Wal-

---

[1]The term "contraindication" is defined as "an indication, symptom, or condition that makes inadvisable a particular treatment or procedure." Webster's Third New International Dictionary 495 (1993).

Mart pharmacy in McHenry about six times to have other prescriptions filled. Each time she went, pharmacy workers asked her if she had any drug allergies, and each time she told them she was allergic to aspirin, acetaminophen, and ibuprofen. Wal-Mart pharmacy manager Steven Odes testified in his deposition that in August 1993, it was the pharmacy's policy and procedure to ask customers about their known allergies prior to dispensing medication. The purpose of this practice, Odes said, was to alert the pharmacist to any drug interactions or allergies. Both Odes and Florence Bowser, another of defendant's pharmacists, testified that Heidi's allergy information was in the pharmacy's computer system and available to pharmacists on August 4, 1993, when Heidi's Toradol prescription was filled.

Bowser testified in her deposition that she was working at the Wal-Mart pharmacy on August 4, 1993, but she believed that Odes was also on duty that day. Bowser took the call from Dr. Lorenc's office and wrote down the Toradol prescription, but she did not remember actually filling the prescription. She said she had "no memory of the entire incident." Odes stated that he did not work at the pharmacy on August 4, 1993, and that Bowser was the only pharmacist on duty and therefore she filled the prescription. Odes also stated that Bowser would have had available to her the information that Toradol should not be given to patients with allergies to aspirin or other NSAIDs. According to Odes, Bowser "would know if there was a contraindication." Bowser indicated that she was aware that Toradol was contraindicated for persons who were sensitive to aspirin and ibuprofen.

If the Toradol information was in the pharmacy's computer, a "drug interaction" warning would have flashed across the screen, halting the prescription process for customers such as Heidi for whom Toradol was contraindicated. At that point, the pharmacist was to call

the physician and notify him of the contraindication. Bowser did not remember calling Dr. Lorenc about Heidi's prescription, nor did she remember seeing any documentation indicating that she made such a call.

If, after being notified of a contraindication, a physician wanted the prescription filled anyway, the pharmacist would have to override the computer system by entering a special code. Odes testified that in order for Heidi's Toradol prescription to have been filled on August 4, 1993, Bowser would have had to override the system. He agreed that in such circumstances, to override the computer and fill the prescription without first contacting the physician would be a deviation from the standard of care applicable to pharmacists. Bowser testified that a pharmacist is required to know a customer's drug allergies and contraindications.

Once Heidi learned on August 4, 1993, that the prescription had been called in to the Wal-Mart pharmacy, she telephoned her husband, Kent, at work, and asked him to pick it up. Prior to this date, neither she nor Kent had ever heard of Toradol, which is an NSAID, as is aspirin. Kent went to the pharmacy to pick up the prescription, but before it was filled, a pharmacy worker asked him about Heidi's drug allergies. Kent informed the worker that Heidi was allergic to aspirin, ibuprofen, and acetaminophen.

There were directions on the bottle that Heidi received from the pharmacy, but there was no warning about contraindications. Heidi took the first dose of Toradol at about 4 p.m. on August 4, and within 40 minutes she began to experience respiratory problems including a tightness in her chest. She began a breathing treatment with a nebulizer, and called the pharmacy to ask if she could be having a reaction to Toradol. Her call was disconnected. She called again, and was told that there should be no drug reaction problem. Heidi then called a

friend who was a pharmacist and was aware of her allergies. He told her to begin a nebulizer treatment if she had not already done so, and to go to the emergency room if her condition worsened. She went to the emergency room, and was found to be experiencing anaphylactic shock.[2] Heidi testified in her deposition that, as a result of taking Toradol, she subsequently experienced more frequent asthma attacks, as well as seizures and a worsening of her multiple sclerosis.

On September 30, 1994, plaintiffs filed a negligence action against Dr. Lorenc and Wal-Mart. On March 8, 1999, Wal-Mart filed a motion for summary judgment, and on March 15, 1999, plaintiffs settled with Dr. Lorenc and dismissed him from their complaint. Plaintiffs then moved to amend their complaint to add punitive damages claims. The trial court denied this request as well as Wal-Mart's motion for summary judgment. Plaintiffs filed an amended motion seeking to add punitive damages claims to their complaint.

Defendant Wal-Mart filed a motion to reconsider the denial of summary judgment, arguing that there was no legal duty for it to warn, and it did not voluntarily assume such a duty. On September 17, 1999, the trial court granted summary judgment in favor of defendant and denied plaintiffs' motion to amend their complaint. On appeal, the appellate court reversed the granting of summary judgment, concluding that defendant Wal-Mart owed plaintiffs a duty to warn. 316 Ill. App. 3d 621.

---

[2]"Anaphylactic" is derived from the term "anaphylaxis," which is defined as "hypersensitivity (as to foreign proteins or drugs) *** manifested in man in acute serum sickness and in severe or fatal reactions to second or later administrations of certain drugs." Webster's Third New International Dictionary 78 (1993). In her deposition, Florence Bowser defined "anaphylactic shock" as follows: "It means the internal organs can swell, breathing passages can swell and the person can die."

However, the court made it clear that this duty was a narrow one:

"[U]nder the circumstances here, where defendant knew of Heidi's allergies, where defendant knew that Toradol was contraindicated for a person with Heidi's allergies, and where defendant knew that injury or death was substantially certain to result, defendant had an affirmative duty to disclose, either to Dr. Lorenc or to Heidi, the information that Heidi should not take Toradol." 316 Ill. App. 3d at 629.

The appellate court also affirmed the trial court's denial of plaintiffs' motion to amend their complaint.

## ANALYSIS

After granting Wal-Mart's petition for leave to appeal (177 Ill. 2d R. 315), we granted leave to the National Association of Chain Drug Stores to file an *amicus curiae* brief supporting defendant's arguments. We also granted leave for the National Association of Boards of Pharmacy (NABP) to file an *amicus curiae* brief supporting plaintiffs' arguments. Thereafter, Wal-Mart filed a motion before this court seeking to strike the NABP's brief for including materials outside the record. See *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23 (1987); *Jenkins v. Wu*, 102 Ill. 2d 468 (1984). We ordered the motion taken with the case. We note that Wal-Mart had by motion objected to the same materials before the appellate court. That court denied the motion. Having reviewed the NABP's brief, we find, similar to the appellate court, that the materials provided by the NABP are relevant to standards of practice and care, and that such matters were raised in pleadings and depositions in this case. We therefore deny Wal-Mart's motion to strike the NABP's brief.

This matter is before this court on Wal-Mart's motion for summary judgment. In cases involving motions for summary judgment, we conduct a *de novo* review of the evidence in the record. *Espinoza v. Elgin, Joliet &*

*Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). The purpose of a summary judgment proceeding is not to try an issue of fact, but to determine whether any genuine issue of material fact exists. *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 31 (1992); *Housh v. Swanson*, 203 Ill. App. 3d 377, 381 (1990). It is "a drastic means of disposing of litigation" *(Espinoza,* 165 Ill. 2d at 113) and therefore should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (735 ILCS 5/2—1005(c) (West 2000)). For purposes of summary judgment, we construe the facts strictly against the moving party and in the light most favorable to the nonmoving party. *Espinoza,* 165 Ill. 2d at 113; *Frye,* 153 Ill. 2d at 31.

As noted, the central issue before us concerns the existence of a duty, *i.e.*, whether defendant and plaintiffs stood in such a relationship to each other that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiffs. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 525 (1987); *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990). " ' "A duty to warn exists where there is unequal knowledge, actual or constructive [of a dangerous condition], and the defendant[,] possessed of such knowledge, knows or should know that harm might or could occur if no warning is given." ' " *Schellenberg v. Winnetka Park District*, 231 Ill. App. 3d 46, 52 (1992), quoting *Pitler v. Michael Reese Hospital*, 92 Ill. App. 3d 739, 745 (1980), quoting *Kirby v. General Paving Co.*, 86 Ill. App. 2d 453, 457 (1967). "Whether a duty exists in a particular case is a question of law to be determined by the court." *Ward,* 136 Ill. 2d at 140; *Kirk,* 117 Ill. 2d at 525.

In determining whether a duty exists, courts look to certain relevant factors. These include: (1) the reason-

able foreseeability that the defendant's conduct may injure another, (2) the likelihood of an injury occurring, (3) the magnitude of the burden of guarding against such injury, and (4) the consequences of placing that burden on the defendant. *Ward,* 136 Ill. 2d at 140-41; *Kirk,* 117 Ill. 2d at 525-26; *Colonial Inn Motor Lodge, Inc. v. Gay,* 288 Ill. App. 3d 32, 40 (1997).

It is undisputed that, at the time Heidi's prescription was filled on August 4, 1993, Wal-Mart was aware not only of Heidi's drug allergies, but also that the drug prescribed by Dr. Lorenc, Toradol, was contraindicated for persons such as Heidi who are allergic to aspirin. Given this superior knowledge on the part of Wal-Mart, and particularly given the nature of the knowledge, *i.e.,* that Toradol was *contra*indicated, it was reasonably foreseeable that a failure to convey this knowledge might result in injury to Heidi. Both the likelihood and the reasonable foreseeability of injury here were great. These factors thus favor the imposition of a duty on Wal-Mart.

The burden on defendant of imposing this duty is minimal. All that is required is that the pharmacist telephone the physician and inform him or her of the contraindication. Alternatively, the pharmacist could provide the same information to the patient. Since this burden of warning about a contraindication is extremely small, this factor also favors the imposition of a duty here.

Next, we consider the consequences of imposing a duty to warn on defendant. As is discussed more fully below, defendant is not being asked to learn the customer's condition, nor is defendant being required to render a medical judgment or interject itself into the doctor-patient relationship. Instead, Wal-Mart need only pass along to the customer or the physician the information it already possesses about the contraindication for this specific customer. Such a practice apparently was already

being followed at the Wal-Mart pharmacy in McHenry. Bowser testified in her deposition that prior to August 1993 she had had occasion "once, twice a month" to notify a physician about a patient's drug allergies. In these circumstances, the recognition of a duty to warn would simply require Wal-Mart to continue with a practice it was already engaged in.

Wal-Mart contends that imposing a duty to warn here would have a "chilling effect" on pharmacies and their customers. According to Wal-Mart, because the duty to warn is premised on the pharmacy's knowledge of a customer's allergies, the imposition of such a duty may discourage pharmacies from gathering information about customers' allergies in the first instance. In order to avoid this duty, pharmacies will no longer request allergy information or record it in their computers. Thus the pharmacy's customers will be deprived of potentially beneficial warnings. Therefore, Wal-Mart contends, no duty should be recognized. We disagree.

The consequence of accepting Wal-Mart's "chilling effect" argument would be to sanction the status quo, where pharmacies solicit allergy information from their customers but are under no obligation to follow through with a warning, even where the pharmacy knows that the drug being prescribed is contraindicated for the individual customer. The difficulty with this approach is that the status quo is unacceptable. By asking customers about their drug allergies, the pharmacy is engendering reliance in the customer that the pharmacy will take steps to ensure that the customer does not receive a drug to which the customer is allergic. There can be no other reason for a pharmacy's seeking this information regarding drug allergies. Where the pharmacy fails to warn the customer, then the customer is placed at risk of serious injury or death.

We do not disapprove of pharmacies' collecting al-

lergy information and recording it in their computers. However, if a pharmacy chooses to engage in such a practice, it must also warn of known contraindications. The alternative, as noted, would place the customer at serious risk. We therefore conclude that any negative consequences of recognizing a duty to warn here are far outweighed by the substantial reasons favoring such a duty. Accordingly, this factor also supports the imposition of a duty on Wal-Mart.

We think that, given the circumstances in this case, Wal-Mart had a duty to warn and that this duty is encompassed within the pharmacist's duty of ordinary care. See *Eldridge v. Eli Lilly & Co.*, 138 Ill. App. 3d 124, 126 (1985) ("A pharmacist owes a duty of ordinary care in practicing his profession, but such care requires the highest degree of prudence, thoughtfulness and diligence, and it is proportioned to the danger involved"). As noted, Wal-Mart was aware not only of Heidi's drug allergies, but also that Toradol was contraindicated for persons with such allergies. A contraindication is a serious limitation on a drug's use, necessarily implying grave consequences if it is ignored. As one court has noted, a contraindication refers to "a circumstance under which the drug must never be given." *Hand v. Krakowski*, 89 A.D.2d 650, 651, 453 N.Y.S.2d 121, 123 (1982), cited with approval in *McKee v. American Home Products Corp.*, 113 Wash. 2d 701, 715, 782 P.2d 1045, 1053 (1989). Taking into account the potentially severe consequences of a failure to warn in this case, we conclude that imposing on Wal-Mart a duty to warn is clearly proportionate to "the danger involved." *Eldridge*, 138 Ill. App. 3d at 126.

Notwithstanding the foregoing, Wal-Mart argues that the appellate court below erred in finding that Wal-Mart had a duty to warn Heidi or Dr. Lorenc about the Toradol contraindication. Wal-Mart contends that because Illinois has adopted the learned intermediary doctrine,

under which the prescribing physician has the primary responsibility to warn of drug interactions and side-effects, pharmacies in Illinois have no such duty. According to Wal-Mart, "[t]he learned intermediary doctrine exempts pharmacists and pharmacies from giving warnings to patients." Accordingly, Wal-Mart contends that, absent any duty to warn on Wal-Mart's part, the trial court was correct in granting summary judgment in defendant's favor, and the appellate court's reversal of this judgment was in error. We disagree.

In support of its argument, Wal-Mart relies upon several Illinois cases, including *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507 (1987), wherein this court adopted the learned intermediary doctrine. In *Kirk*, the plaintiff was injured while riding as a passenger in a car driven by Daniel McCarthy, who had been a psychiatric patient at the defendant hospital. Certain prescription drugs were given to McCarthy on the day he was discharged from the hospital. On that same day, McCarthy consumed an alcoholic beverage. Later in the day, the car he was driving hit a tree, injuring the plaintiff. In his complaint, which named as defendants the hospital, the prescribing physicians, the manufacturers of the prescription drugs, and McCarthy, the plaintiff alleged, *inter alia*, that the hospital negligently failed to adequately warn McCarthy that the prescribed drugs would diminish his physical and mental abilities. The trial court dismissed the counts against most of the defendants, but the appellate court reversed and remanded the dismissed counts for trial.

In reversing the appellate court and affirming the trial court's decision, this court relied in part upon the learned intermediary doctrine. Under this rule, "manufacturers of prescription drugs have a duty to warn prescribing physicians of the drugs' known dangerous propensities, and the physicians, in turn, using their

medical judgment, have a duty to convey the warnings to their patients." *Kirk*, 117 Ill. 2d at 517. The underlying rationale of the learned intermediary doctrine is that, with regard to prescription drugs, which are likely to be complex medicines, it is the prescribing physician who knows both the propensities of the drug and the suscepti- bilities of his patient, and who therefore is in the best position to prescribe a particular drug for the patient. Accordingly, while drug manufacturers must warn the ultimate purchasers about the dangers inherent in *patent drugs* sold *over the counter*, the manufacturer need not warn the individual consumer about the dangers of *pre- scription* drugs. In selling these drugs, the manufacturer is required to warn only the prescribing physician, who then acts as a " ' "learned intermediary" ' " between the manufacturer and the consumer. *Kirk*, 117 Ill. 2d at 518, quoting *Stone v. Smith, Kline & French Laboratories*, 731 F.2d 1575, 1580 (11th Cir. 1984), quoting *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1276 (5th Cir. 1974).

Based on this doctrine, the court in *Kirk* held that the defendant drug manufacturers had no duty to warn patients directly. The court came to the same conclusion with regard to the defendant hospital:

> "The extent of warnings to patients concerning prescrip- tion drugs, as we have previously noted, is within the discretion of the physician. As such, the alleged negligent acts specified in the complaint are matters within the duty of care owed by the treating physician, rather than the hospital." *Kirk*, 117 Ill. 2d at 524.

While the hospital might appear to have been acting in the role of a pharmacy, the court in *Kirk* did not directly address the question of whether the learned intermediary doctrine applied to pharmacies.[3] However, in the following year that question was addressed by our

___

[3]The court in *Kirk* did state in *dictum* that "negligence claims against pharmacists for failure to warn concerning overconsump- tion of drugs have been dismissed primarily because the manufac-

appellate court. In *Leesley v. West*, 165 Ill. App. 3d 135 (1988), a decision also relied upon by Wal-Mart, the second district appellate court applied the learned intermediary doctrine to pharmacists, and held that the defendant pharmacy had no duty to pass on to a customer relevant warnings given to it by the manufacturer of a prescription drug. The plaintiff in *Leesley* sued for damages resulting from severe gastrointestinal bleeding caused by the prescription drug Feldene. In her complaint, the plaintiff alleged, *inter alia*, that both the drug manufacturer and the pharmacy that filled the prescription failed to warn her directly about the potential hazards of the drug, including gastrointestinal bleeding, which is a known but infrequent side effect of Feldene.

The court in *Leesley* held that, based in part on the learned intermediary doctrine, neither the manufacturer nor the pharmacy had a duty to warn the customer directly of the potential side effects of Feldene. With regard to the pharmacy, the court explained that the foreseeability of injury to an individual consumer "varies greatly depending on the medical history and condition of the individual—facts which we cannot reasonably expect the pharmacist to know." *Leesley*, 165 Ill. App. 3d at 142. The court in *Leesley* also noted that it would be "very burdensome" to require the pharmacy to convey to its customers the warnings it received from the manufacturer. Such a requirement might very well mean that pharmacists "must bear the additional costs of reproducing the material they receive." *Leesley*, 165 Ill. App. 3d at 142.

Other cases relied upon by Wal-Mart include *Eldridge v. Eli Lilly & Co.*, 138 Ill. App. 3d 124 (1985), and *Fakhouri v. Taylor*, 248 Ill. App. 3d 328 (1993), both of which

---

turers' warnings about prescription drugs are to be given to the physicians, who then had the duty to warn the patients." *Kirk*, 117 Ill. 2d at 526.

address the question of whether a pharmacist has a duty to warn that drugs are being prescribed in excessive quantities. In each case, the court pointed to the learned intermediary doctrine in concluding that no such duty exists.

Relying on the foregoing and similar cases, Wal-Mart contends that the learned intermediary doctrine precludes the imposition of a duty to warn here. We disagree. Given the particular facts in the instant case, we conclude that this case is outside the purview of the learned intermediary doctrine.

As noted, the rationale underlying the learned intermediary doctrine is that because the prescribing physician has knowledge of the drugs he is prescribing and, more importantly, knowledge of his patient's medical history, it is the physician who is in the best position to prescribe drugs and monitor their use. Thus manufacturers of these drugs should not be required to warn individual patients of the dangers inherent in their use. That is the proper province of the prescribing physician, not the drug manufacturer, who has a duty only to warn the physician.

It is this rationale which underlies the reasons cited by the courts in *Leesley*, *Eldridge* and *Fakhouri* in explaining why pharmacists should not have a duty to warn a patient or physician of the adverse side effects of prescription drugs. Imposing such a duty, the court in *Eldridge* noted, "would require the pharmacist to learn the customer's condition and monitor his drug usage. To accomplish this, the pharmacist would have to interject himself into the doctor-patient relationship and practice medicine without a license." *Eldridge*, 138 Ill. App. 3d at 127. Similarly, the court in *Fakhouri* asserted that "[d]etermining which medication is to be utilized in any given case requires an individualized medical judgment, which, in our opinion, only the patient's physician can

provide." *Fakhouri*, 248 Ill. App. 3d at 332. The court noted that it is the physician who presumably knows the patient's current condition as well as his complete medical history. Therefore, the court in *Fakhouri* explained, "[t]o impose a duty to warn on the pharmacist would be to place the pharmacist in the middle of the doctor-patient relationship, *without* the physician's knowledge of the patient." (Emphasis in original.) *Fakhouri*, 248 Ill. App. 3d at 332-33. Along these same lines, the court in *Leesley* noted that a pharmacist cannot reasonably be expected to know the medical history and condition of the individual consumer, and therefore should not have a duty to warn individual consumers.

These reasons for not imposing a duty to warn on pharmacists do not apply in the instant case. Here, Wal-Mart was aware not only of Heidi's drug allergies, but also that Toradol was contraindicated for persons such as Heidi with allergies to aspirin. Imposing a duty to warn of this contraindication would not require the pharmacist to "learn the customer's condition and monitor his drug usage." *Eldridge*, 138 Ill. App. 3d at 127. On the contrary, Wal-Mart already had the knowledge it needed in order to give an effective warning, and this warning required Wal-Mart only to notify Dr. Lorenc or Heidi of the Toradol contraindication, not to monitor Heidi's drug usage.[4] Further, imposing a duty to warn here would not have intruded Wal-Mart into the doctor-patient relationship, forcing it to "practice medicine without a license." *Eldridge*, 138 Ill. App. 3d at 127. We agree with the appellate court below that "[t]his is not a case in which the plaintiff is asking the pharmacist to exercise any modi-

---

[4]We note that the Pharmacy Practice Act of 1987 (225 ILCS 85/1 *et seq.* (West 2000)) defines "Pharmaceutical care" as including "the act of monitoring drug use." 225 ILCS 85/3(t) (West 2000). The narrow duty we impose here would not require the pharmacist to conduct such monitoring.

cum of medical judgment or to interject himself into the doctor-patient relationship." 316 Ill. App. 3d at 627-28.

The situation here differs from that in *Fakhouri* and *Eldridge*, where imposing the duty that the plaintiff sought would have required the pharmacist to warn that drugs were being prescribed in excessive quantities. As the court in *Eldridge* aptly noted, "[a] prescription which is excessive for one patient may be entirely reasonable for the treatment of another." *Eldridge*, 138 Ill. App. 3d at 127. Hence, imposing upon a pharmacist a duty to warn in such a situation might arguably require him to make a medical judgment. Here, the pharmacist was faced not with a prescription for a quantity in excess of normal use, but rather with a simple contraindication, which, as noted, means that the drug should not be given. See *Hand v. Krakowski*, 89 A.D.2d 650, 651, 453 N.Y.S.2d 121, 123 (1982); Webster's Third New International Dictionary 495 (1993). It requires no medical judgment simply to notify a physician or a patient of such a contraindication.

Contrary to Wal-Mart's contentions, the scope of the protection provided to pharmacists by the learned intermediary doctrine is limited, particularly in situations such as the instant case where a pharmacy has knowledge that a prescribed medication is contraindicated for a specific customer. With the exception of the appellate decision below in the case at bar, we have found no Illinois decisions addressing the question of a pharmacist's duty to warn in these circumstances. However, courts in other jurisdictions have addressed either this or similar issues. We find the decision in *Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.3d 455 (Tex. Ct. App. 2000), particularly instructive with regard to the limitations of the learned intermediary doctrine in situations similar to the case at bar.

The plaintiffs in *Morgan* sued Wal-Mart Stores, Inc.,

alleging that their son's death in August 1993 resulted from an adverse reaction to Desipramine, a prescription drug sold by a Wal-Mart pharmacist. The plaintiffs alleged that Wal-Mart was negligent in failing to properly warn of the hazards and harms associated with the use of Desipramine. The jury agreed, finding that Wal-Mart's failure to warn was negligent, and that this failure was a proximate cause of the son's death. On appeal, Wal-Mart argued, as it does here, that its pharmacists had no duty to warn of the potential dangers of Desipramine because that duty rested with the prescribing physician.

The appellate court in *Morgan* reversed the trial court, concluding that pharmacists have no generalized duty to warn of potential adverse reactions to prescription drugs. However, in reaching this conclusion, the court made clear the limitations in its holding. It noted specifically that the plaintiffs had not alleged that Wal-Mart possessed any special knowledge of their son's medical history that would have imposed upon Wal-Mart a duty to warn. In addition, the plaintiffs did not contend "that Wal-Mart was or should have been aware of any contraindications." *Morgan*, 30 S.W.3d at 467. The court in *Morgan* pointed to decisions in other jurisdictions where a duty was imposed on pharmacists "beyond accurately filing [*sic*] prescriptions *** based on the presence of additional factors, such as *known contraindications*, that would alert a reasonably prudent pharmacist to a potential problem." (Emphasis added.) *Morgan*, 30 S.W.3d at 466.

The court acknowledged that Wal-Mart might have been liable if there had been "neglect in the face of information on which a reasonably prudent pharmacist would have acted." *Morgan*, 30 S.W.3d at 467. In the absence of such information, however, there was no liability. Hence, the court's carefully worded holding in *Morgan*:

> "[I]n light of the learned intermediary doctrine, which we find applicable to the relationship among physician,

patient, and pharmacist, we hold that pharmacists have no generalized duty to warn patients of potential adverse reactions to prescription drugs *absent some special circumstances not present here.*" (Emphasis added.) *Morgan,* 30 S.W.3d at·469.

In the instant case, by contrast, such "special circumstances" were present. It is undisputed that Wal-Mart had "special knowledge" of Heidi's medical history, *i.e.*, her drug allergies. In addition, Wal-Mart knew that Toradol was contraindicated for persons such as Heidi with allergies to aspirin and other NSAIDs. In such limited circumstances, a narrow duty to warn clearly exists. See *McKee v. American Home Products Corp.,* 113 Wash. 2d 701, 715, 782 P.2d 1045, 1053 (1989) (agreeing that "pharmacists should have a duty to be alert for patent errors in a prescription, [including] \*\*\* known contraindications \*\*\* and to take corrective measures" (emphasis omitted)).

For the reasons set forth above, we hold that a narrow duty to warn exists where, as in the instant case, a pharmacy has patient-specific information about drug allergies, and knows that the drug being prescribed is contraindicated for the individual patient. In such instances, a pharmacy has a duty to warn either the prescribing physician or the patient of the potential danger.

Because of our disposition on the duty of the pharmacy, we need not address Wal-Mart's argument that it engaged in no voluntary undertaking to warn, and therefore did not remove itself from the protection of the learned intermediary doctrine. See *Kasin v. Osco Drug, Inc.,* 312 Ill. App. 3d 823, 827 (2000) (concluding that under *Frye v. Medicare-Glaser Corp.,* 153 Ill. 2d 26 (1992), the learned intermediary doctrine no longer applies once a pharmacist voluntarily undertakes to warn a consumer of a drug's dangerous propensities). The duty we impose here is beyond the scope of the learned

198

intermediary doctrine. Thus it is irrelevant whether Wal-Mart removed itself from the protection of this rule. The learned intermediary doctrine is simply not implicated by the circumstances in this case.

## CONCLUSION

Because we have concluded that Wal-Mart owed a narrow duty to warn in this case, there remains a genuine issue of material fact as to whether Wal-Mart breached this duty, and if so, whether this breach proximately caused Heidi's injuries. Summary judgment therefore was improper. Accordingly, we affirm the judgment of the appellate court below, which reversed the trial court's granting of summary judgment and remanded the cause for further proceedings.

*Affirmed.*